Daniel M. Cislo, Esq., No. 125,378
 dan@cislo.com
Katherine B. Sales, Esq., No. 300,194
 ksales@cislo.com
CISLO & THOMAS LLP
12100 Wilshire Boulevard, Suite 1700
Los Angeles, California 90025
Telephone: (310) 451-0647
Telefax: (310) 394-4477

Attorneys for
AquaStar Pool Products, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| AQUASTAR POOL PRODUCTS, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>COLOR MATCH POOL FITTINGS, INC., an Arizona corporation; PUL PRODUCTS, LLC, an Arizona limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:22-cv-01237<br><br>**COMPLAINT FOR PATENT INFRINGEMENT 35 U.S.C. § 271**<br><br>**REQUEST FOR JURY TRIAL** |

AquaStar Pool Products, Inc. asserts the following claims against Defendants Color Match Pool Fittings, Inc. ("Color Match") and PUL Products, LLC ("PUL") as follows:

## I.    PARTIES

1. AquaStar is a corporation organized under the laws of the state of California, with offices and manufacturing located at 2340 Palma Drive #104, Ventura, CA 93003. *See*, AquaStarPoolProducts.com.

2. AquaStar is the owner of U.S. Patent No. 9,869,103 ("the '103 patent"), U.S. Patent No. 10,214,930 ("the '930 patent"), U.S. Patent No. 10,323,429 ("the '429 patent"), U.S. Patent No. 10,465,404 ("the '404 patent"), U.S. Patent No. 10,745,926 ("the '926 patent"), and U.S. Patent No. 11,268,291 ("the '291 patent"), the patents at issue in the present Action.

3. Upon information and belief, Defendant Color Match is a corporation organized under the laws of the state of Arizona, having a distribution center located at 3016 Kansas Avenue, Bldg. 3, Riverside, CA 92507. Attached as **Exhibit A** is a true and correct copy of a printout from Color Match's website stating it has a distribution center in Riverside, California. Attached as **Exhibit B** is a true and correct copy of a printout from the Arizona Corporation Commission website showing Color Match's Riverside, CA address. Upon information and belief, Color Match's owner, Todd Krombein, manages the business out of his home at 26204 N. 56th Drive, Phoenix, AZ 85083.

4. Upon information and belief, Defendant PUL is a corporation organized under the laws of the state of Arizona, having a headquarters located at 1555 E Orangewood Ave, Suite 3, Phoenix, AZ 85020. Attached as **Exhibit C** is a true and correct copy of a printout from PUL's website stating it has a business address in Phoenix, AZ. Attached as **Exhibit D** is a true and correct copy of a printout from the Arizona Corporation Commission website showing PUL's Phoenix, AZ address.

5. AquaStar reserves the right to amend this complaint, including the right to name additional Defendants in keeping with the Federal Rules of Civil Procedure.

## II. JURISDICTION AND VENUE

6. AquaStar brings this action for injunctive relief and damages arising out of unauthorized acts by Defendant that constitute infringement of the '103 Patent, the '930 Patent, the '429 Patent, the '404 Patent, the '926 Patent, and the '291 Patent. As a result, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 35 U.S.C. § 281.

7. This Court has personal jurisdiction over Defendant on the grounds that Defendant resides in and is doing business in this Judicial District, including committing acts of patent infringement in this District as alleged herein. Venue is proper in this Judicial District and Division pursuant to 28 U.S.C. § 1400(b) because Defendant has committed acts of patent infringement in this Judicial District and Division and has a regular and established business in this District and Division.

## III. THE ASSERTED PATENTS

8. U.S. Patent No. 9,869,103 ("the '103 patent"), entitled "Low Profile Circular Drain With Water Stop For Swimming Pools," describes and claims a circular-shaped sump drain for embedding in the plaster surface of a swimming pool or spa. The patent issued on January 16, 2018, and a true and correct copy is attached hereto as **Exhibit E**.

9. U.S. Patent No. 10,214,930 ("the '930 patent"), entitled "Low Profile Circular Drain With Water Stop For Swimming Pools," describes and claims a circular-shaped sump drain for embedding in the plaster surface of a swimming pool or spa. The patent issued on February 26, 2019, and a true and correct copy is attached hereto as **Exhibit F**.

10. U.S. Patent No. 10,323,429 ("the '429 patent"), entitled "Low Profile Circular Drain With Water Stop For Swimming Pools," describes and claims a circular-shaped sump drain for embedding in the plaster surface of a swimming pool

or spa. The patent issued on June 18, 2019, and a true and correct copy is attached hereto as **Exhibit G**.

11.     U.S. Patent No. 10,465,404 ("the '404 patent"), entitled "Low Profile Circular Drain With Water Stop For Swimming Pools," describes and claims a circular-shaped sump drain for embedding in the plaster surface of a swimming pool or spa. The patent issued on November 5, 2019, and a true and correct copy is attached hereto as **Exhibit H**.

12.     U.S. Patent No. 10,745,926 ("the '926 patent"), entitled "Low Profile Circular Drain With Water Stop For Swimming Pools," describes and claims a circular-shaped sump drain for embedding in the plaster surface of a swimming pool or spa. The patent issued on August 18, 2020, and a true and correct copy is attached hereto as **Exhibit I**.

13.     U.S. Patent No. 11,268,291 ("the '291 patent"), entitled "Low Profile Circular Drain With Water Stop For Swimming Pools," describes and claims a circular-shaped sump drain for embedding in the plaster surface of a swimming pool or spa. The patent issued on March 8, 2022, and a true and correct copy is attached hereto as **Exhibit J**.

14.     Olaf Mjelde, AquaStar's president and chief executive officer, is the inventor of the patents at issue. AquaStar is the owner of the '103 Patent, the '930 Patent, the '429 Patent, the '404 Patent, the '926 Patent, and the '291 Patent, which are embodied in various AquaStar drains.

### IV.     PRIOR LITIGATION AND SETTLEMENT

15.     AquaStar became aware of Color Match manufacturing, distributing, using, selling and/or offering to sell AquaStar's patented circular drain in the U.S. including California and this judicial district, and thus commenced litigation against Color Match by filing a complaint in the United District Court for the Central District of California, Case No. 5:18-cv-00094 (the "2018 Lawsuit").

16. In the 2018 Lawsuit, AquaStar asserted claims for: (1) direct infringement of the '103 patent; and (2) contributory infringement of the '103 patent.

17. AquaStar and Color Match entered into a Settlement Agreement (the "Settlement Agreement") on September 17, 2019.

18. Color Match violated the Settlement Agreement by continuing to offer for sale and selling the 360 Pebble Top Drain.

19. Accordingly, AquaStar is filing the present lawsuit for breach of the Settlement Agreement. AquaStar seeks injunctive relief, specific performance, and damages for Color Match's failure to comply with the Settlement Agreement.

## V.   FACTUAL ALLEGATIONS

### A.   AquaStar and Its Circular Drain

20. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 19 above.

21. AquaStar is a nationally renowned USA manufacturer and supplier of innovative swimming pool and spa products. Those products include a wide variety of drain covers, sump buckets, fittings, jets, cleaners, ozone generators, lighting and replacement parts, among others. AquaStar's drains are VGB compliant, with the Virginia Graeme-Baker Pool & Spa Safety Act, 15 U.S.C. § 8001 *et seq*. ("the VGB Act"). The VGB Act mandates enlarged pool drains, or multiple drains connected together, to prevent suction entrapment and the attendant risk of drowning. While the VGB Act prescribes a minimum size for pool drains, the configuration and shape of any given VGB Act compliant drain remains a matter of design preference, among other considerations.

22. AquaStar designed and created a novel and non-obvious VGB Act compliant sump drain that includes an annular or ring-like shaped chamber defining an outer sidewall and plurality of ports extending inward to a central port. The circular drain has several advantages over AquaStar's earlier VGB drains. First, the

drain is configured such that, upon installation, plaster substantially fills the space between the chamber and central hub which allows that drain to attractively blend in with the pool or spa floor. Second, the top opening of the drain is substantially flush with the spa pool or floor and avoids contact with swimmers and allows pool-cleaning equipment to glide over the drain. Lastly, the drain's compliance with the VGB Act avoids the time and expense of designing and installing multiple drain systems.

### B.    Color Match's Infringing Circular Drain

23.    Defendant Color Match is a smaller operation that manufactures and sells pool drains, pool drain covers, and pool fittings. Color Match is advertising and selling a highly similar drain covered by nearly all of AquaStar's issued patent claims. This drain is advertised as the 360 Pebble Top Drain. Attached as **Exhibit K** is a true and correct copy of Color Match's website wherein the 360 Pebble Top Drain is advertised.

24.    On April 18, 2022, Color Match supplied the 360 Pebble Top Drain to Premier Pools & Spas, in clear violation of the Settlement Agreement. Accordingly, Color Match has been making or having made, using, offering for sale, selling, and potentially exporting a pool drain that it calls the 360 Pebble Top Drain, which utilizes the invention AquaStar disclosed and claimed in its '103 Patent, '930 Patent, '429 Patent, '404 Patent, '926 Patent, and '291 Patent.

25.    AquaStar attaches hereto as **Exhibit L** a true and correct copy of images of Color Match's 360 Pebble Top Drain and, as **Exhibit M,** a true and correct copy of certain marketing statements and instructions for using its 360 Pebble Top Drain including pages from its website, *https://www.poolfittings.com/superflow-360*.

26.    AquaStar attaches hereto as **Exhibit N** a claims chart comparing the independent patent claims of the '103 Patent and Color Match's drain.  The claims

chart, incorporated herein, reflects the infringement.

27. AquaStar attaches hereto as **Exhibit O** a claims chart comparing the independent patent claims of the '930 Patent and Color Match's drain. The claims chart, incorporated herein, reflects the infringement.

28. AquaStar attaches hereto as **Exhibit P** a claims chart comparing the independent patent claims of the '429 Patent and Color Match's drain. The claims chart, incorporated herein, reflects the infringement.

29. AquaStar attaches hereto as **Exhibit Q** a claims chart comparing the independent patent claims of the '404 Patent and Color Match's drain. The claims chart, incorporated herein, reflects the infringement.

30. AquaStar attaches hereto as **Exhibit R** a claims chart comparing the independent patent claims of the '926 Patent and Color Match's drain. The claims chart, incorporated herein, reflects the infringement.

31. AquaStar attaches hereto as **Exhibit S** a claims chart comparing the independent patent claims of the '291 Patent and Color Match's drain. The claims chart, incorporated herein, reflects the infringement.

**C.   PUL's Offer for Sale of Color Match's Infringing Circular Drain**

32. Defendant Pul is also a smaller operation that sells Defendant Color Match's circular drain, among other pool related products. Attached as **Exhibit T** is a true and correct copy of PUL's website wherein Color Match's 360 Pebble Top Drain (referred to by PUL as the Openflow 360 Debris Removal Drain) is advertised.

///
///
///

## COUNT I
## BREACH OF SETTLEMENT AGREEMENT
## (AGAINST COLOR MATCH ONLY)

33. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 32 above.

34. The Settlement Agreement represents the terms of a binding, enforceable agreement entered into by Color Match and AquaStar.

35. The Settlement Agreement was signed on behalf of Color Match by its owner Todd Krombein and on behalf of AquaStar by its CEO Olaf Mjelde.

36. AquaStar has performed its obligations under the terms of the Settlement Agreement.

37. Color Match has breached the Settlement Agreement by continuing to make or have made, use, offer for sale, sell, and potentially export a pool drain that it calls the 360 Pebble Top Drain long after the execution of the Settlement Agreement.

38. As a direct and proximate result of Color Match's breaches, AquaStar has sustained damages.

39. On information and belief, AquaStar believes that additional breaches of the Settlement Agreement by Color Match will be uncovered during discovery.

40. AquaStar is entitled to Color Match's specific performance of Color Match's obligations under the Settlement Agreement.

## COUNT II
## DIRECT PATENT INFRINGEMENT OF U.S. PATENT NO. 9,869,103
## (35 U.S.C. § 271) (AGAINST ALL DEFENDANTS)

41. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 40 above.

42. This claim is against Defendants for direct patent infringement under 35 U.S.C. §§ 101 *et seq.*, including in particular, § 271, by making, using, importing, offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell the circular drain that infringes at least one claim of the '103 Patent.

43. The '103 patent is infringed by Defendants, by at least offering the circular drain for sale, and to the extent there is not direct infringement inducing customers to infringe and contributorily infringing. Under 35 USC §§ 271(b) and (c).

44. AquaStar has been damaged by Defendants' infringement. AquaStar is therefore entitled to damages adequate to fully compensate it for the infringement.

45. As such, Defendants, with knowledge of the '103 Patent, infringe the same. As such, AquaStar is entitled to enhanced damages, as well as reimbursement of its attorneys' fees, expenses, and costs for Defendants' willful and blatant disregard of AquaStar's patent rights.

46. The harm to AquaStar arising from Defendants' direct infringement of the '103 Patent is not fully compensable by monetary damages. Rather, AquaStar has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Defendants' conduct is enjoined

47. AquaStar, therefore, is also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Defendants from further direct infringement.

## COUNT III
## DIRECT PATENT INFRINGEMENT OF U.S. PATENT NO. 10,214,930
## (35 U.S.C. § 271) (AGAINST ALL DEFENDANTS)

48. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 47 above.

49. This claim is against Defendants for direct patent infringement under 35 U.S.C. §§ 101 *et seq.*, including in particular, § 271 by making, using, importing,

offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell the circular drain that infringes at least one claim of the '930 Patent.

50. The '930 patent is infringed by Defendants, by at least offering the circular drain for sale, and to the extent there is not direct infringement inducing customers to infringe and contributorily infringing. Under 35 USC §§ 271(b) and (c).

51. AquaStar has been damaged by Defendants' infringement. AquaStar is therefore entitled to damages adequate to fully compensate it for the infringement.

52. As such, Defendants, with knowledge of the '930 Patent, infringe the same. As such, AquaStar is entitled to enhanced damages, as well as reimbursement of its attorneys' fees, expenses, and costs for Defendants' willful and blatant disregard of AquaStar's patent rights.

53. The harm to AquaStar arising from Defendants' direct infringement of the '930 Patent is not fully compensable by monetary damages. Rather, AquaStar has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Defendants' conduct is enjoined.

54. AquaStar, therefore, is also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Defendants from further direct infringement.

## COUNT IV
## DIRECT PATENT INFRINGEMENT OF U.S. PATENT NO. 10,323,429
## (35 U.S.C. § 271) (AGAINST ALL DEFENDANTS)

55. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 54 above.

56. This claim is against Defendants for direct patent infringement under 35 U.S.C. §§ 101 *et seq.*, including in particular, § 271, by making, using, importing, offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell the circular drain that infringes at least one claim of the '429 Patent.

57. The '429 patent is infringed by Defendants, by at least offering the circular drain for sale, and to the extent there is not direct infringement inducing customers to infringe and contributorily infringing. *See*, 35 USC §§ 271(b) and (c).

58. AquaStar has been damaged by Defendants' infringement. AquaStar is therefore entitled to damages adequate to fully compensate it for the infringement.

59. As such, Defendants, with knowledge of the '429 Patent, infringe the same. As such, AquaStar is entitled to enhanced damages, as well as reimbursement of its attorneys' fees, expenses, and costs for Defendants' willful and blatant disregard of AquaStar's patent rights.

60. The harm to AquaStar arising from Defendants' direct infringement of the '429 Patent is not fully compensable by monetary damages. Rather, AquaStar has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Defendants' conduct is enjoined

61. AquaStar, therefore, is also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Defendants from further direct infringement.

## COUNT V
## DIRECT PATENT INFRINGEMENT OF U.S. PATENT NO. 10,465,404
## (35 U.S.C. § 271) (AGAINST ALL DEFENDANTS)

62. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 61 above.

63. This claim is against Defendants for direct patent infringement under 35 U.S.C. §§ 101 *et seq.*, including in particular, § 271, by making, using, importing, offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell the circular drain that infringes at least one claim of the '404 Patent.

64. The '404 patent is infringed by Defendants, by at least offering the circular drain for sale, and to the extent there is not direct infringement inducing

11

customers to infringe and contributorily infringing. Under 35 USC §§ 271(b) and (c).

65. AquaStar has been damaged by Defendants' infringement. AquaStar is therefore entitled to damages adequate to fully compensate it for the infringement.

66. As such, Defendants, with knowledge of the '404 Patent, infringe the same. As such, AquaStar is entitled to enhanced damages, as well as reimbursement of its attorneys' fees, expenses, and costs for Defendants' willful and blatant disregard of AquaStar's patent rights.

67. The harm to AquaStar arising from Defendants' direct infringement of the '404 Patent is not fully compensable by monetary damages. Rather, AquaStar has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Defendants' conduct is enjoined.

68. AquaStar, therefore, is also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Defendants from further direct infringement.

## COUNT VI
## DIRECT PATENT INFRINGEMENT OF U.S. PATENT NO. 10,745,926
## (35 U.S.C. § 271) (AGAINST ALL DEFENDANTS)

69. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 68 above.

70. This claim is against Defendants for direct patent infringement under 35 U.S.C. §§ 101 *et seq.*, including in particular, § 271, by making, using, importing, offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell the circular drain that infringes at least one claim of the '926 Patent.

71. The '926 patent is infringed by Defendants, by at least offering the circular drain for sale, and to the extent there is not direct infringement inducing customers to infringe and contributorily infringing. Under 35 USC §§ 271(b) and (c).

72. AquaStar has been damaged by Defendants' infringement. AquaStar is therefore entitled to damages adequate to fully compensate it for the infringement.

73. As such, Defendants, with knowledge of the '926 Patent, infringe the same. As such, AquaStar is entitled to enhanced damages, as well as reimbursement of its attorneys' fees, expenses, and costs for Defendants' willful and blatant disregard of AquaStar's patent rights.

74. The harm to AquaStar arising from Defendants' direct infringement of the '926 Patent is not fully compensable by monetary damages. Rather, AquaStar has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Defendants' conduct is enjoined.

75. AquaStar, therefore, is also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Defendants from further direct infringement.

## COUNT VII
## DIRECT PATENT INFRINGEMENT OF U.S. PATENT NO. 11,268,291 (35 U.S.C. § 271) (AGAINST ALL DEFENDANTS)

76. AquaStar repeats and incorporates by this reference the allegations set forth in paragraphs 1 through 75 above.

77. This claim is against Defendants for direct patent infringement under 35 U.S.C. §§ 101 *et seq.*, including in particular, § 271, by making, using, importing, offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell the circular drain that infringes at least one claim of the '291 Patent.

78. The '291 patent is infringed by Defendants, by at least offering the circular drain for sale, and to the extent there is not direct infringement inducing customers to infringe and contributorily infringing. Under 35 USC §§ 271(b) and (c).

79. AquaStar has been damaged by Defendants' infringement. AquaStar is therefore entitled to damages adequate to fully compensate it for the infringement.

13

80. As such, Defendants, with knowledge of the '291 Patent, infringe the same. As such, AquaStar is entitled to enhanced damages, as well as reimbursement of its attorneys' fees, expenses, and costs for Defendants' willful and blatant disregard of AquaStar's patent rights.

81. The harm to AquaStar arising from Defendants' direct infringement of the '291 Patent is not fully compensable by monetary damages. Rather, AquaStar has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Defendants' conduct is enjoined.

82. AquaStar, therefore, is also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Defendants from further direct infringement.

## VI. PRAYER FOR RELIEF

WHEREFORE, AquaStar demands judgment against Defendants as follows:

A. A determination that Defendant Color Match has breached the Settlement Agreement, and an award of all damages, including costs and reasonable attorneys' fees;

B. Under all claims for relief, that injunction be issued enjoining Defendants, their employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from: any unauthorized importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying the circular drain at issue;

C. For an Order seizing and impounding all accused products and all manufacturing supplies for manufacturing the accused product in Defendants' possession, custody, or control;

D. For an Order permitting AquaStar, experts, and/or auditors of AquaStar, to audit and inspect the books, records, and premises' of Defendants and their related

corporations for a period of six (6) months after entry of final relief in this matter, to determine the scope of the Defendants' past use of AquaStar's intellectual property, including all manufacturing, distribution, and sales of 360 Pebble Top Drain products, as well as the Defendant's compliance with the orders of this Court;

E. An award of AquaStar's costs and disbursements incurred in this action, including AquaStar's reasonable attorneys' fees;

F. For an Order requiring Defendants to provide to AquaStar an accounting of all sales and profits realized by Defendants through the sale of the 360 Pebble Top Drains;

G. A Finding that Defendants infringed the '103 Patent, the '930 Patent, the '429 Patent, the '404 Patent, the '926 Patent, and the '291 Patent;

H. For an Order preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, attorneys, affiliates, employees, suppliers, importers, exporters, distributors, resellers, and all other persons acting in concert with Defendants from committing any further acts of infringement (directly, contributorily, or by inducement), including but not limited to, manufacturing, importing, using, exporting, offering to sell, and selling the accused products (or products colorably similar thereto), or contributing to or aiding or abetting or assisting others in such infringing activities;

I. For an Order directing Defendants to file with this Court and to serve on AquaStar within thirty (30) days after service on Defendants of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with and are continuing to comply with the injunction and order of this Court;

J. An Award of damages adequate to fully compensate AquaStar for Defendants' infringement in an amount not less than a reasonable royalty for the use made of the patented invention;

K. A finding that Defendants' infringement was willful;

15

L.   Enhanced damages based upon a finding of willfulness;

M.   A finding that this is an exceptional case, warranting an enhancement of the damages award, AquaStar's attorney fees and costs incurred in bringing this action;

N.   An award of pre-judgment and post-judgment interest until the award is fully paid; and

O.   Such other and further relief as this Court may deem just and equitable under the circumstances.

Dated: July 15, 2022                    Respectfully submitted,

/s/Daniel M. Cislo
Daniel M. Cislo, Esq.
David B. Sandelands, Esq.
Katherine B. Sales, Esq.

Cislo & Thomas LLP
12100 Wilshire Blvd., Suite 1700
Los Angeles, California 90025

Attorneys for Plaintiff
AquaStar Pool Products, Inc.

T:\22-45105\Complaint for patent infringement.docx

# **DEMAND FOR JURY TRIAL**

AquaStar Pool Products, Inc. hereby demands a trial by jury on all issues so triable.

Dated: July 15, 2022                    Respectfully submitted,

/s/Daniel M. Cislo
Daniel M. Cislo, Esq.
David B. Sandelands, Esq.
Katherine B. Sales, Esq.

Cislo & Thomas LLP
12100 Wilshire Blvd., Suite 1700
Los Angeles, California 90025

Attorneys for Plaintiff
AquaStar Pool Products, Inc.